WAKEFIELD *v.* JOHNSON, *Adm'r.*

VENDOR'S LIEN—*What assignee must allege.*—The assignee of a note, which is a lien upon land, must allege in his bill, to inforce the lien, the agreement between the vendor and vendee, and unless he does, he will not be heard in a court of equity.

On title bond to convey, on the payment of the residue of the purchase money, an assignment of the note carries with it the lien; and the assignee, to avail himself of the vendor's lien, must allege in his bill the considerations of the title bond; as, also, whether any other notes, which are liens, remain unpaid; so the holders thereof should be made parties before tendering a deed.

TENDER OF PURCHASE MONEY.—Where vendor wants the purchase money, the deed should be tendered before filing a bill; and where vendee wants a deed, the purchase money should be tendered before filing a bill.

PURCHASE MONEY—*Failure to pay, not a forfeiture.*—The mere fact that money is due, and upaid, does not create a forfeiture, nor is such neglect regarded, in equity, as a *default.*

DEED AND TENDER OF PAYMENT.—The payment of the purchase money, and the execution of the deed, are acts that are to be *simultaneously* done, and not in the order they happen to be stated in the title bond.

*Appeal from Arkansas Circuit Court.*

HON. HENRY B. MORSE, Circuit Judge.

*Garland & Nash,* for appellant.

*Watkins & Rose,* for appellee.

MCCLURE, C. J.

It seems, from the record, that one Hewitt purchased certain lands of one Thomisson, in Arkansas county. For a portion of the purchase money, it seems that Hewitt executed his note to Thomisson. One of these notes passed into the hands of John A. Wakefield, the appellant, who filed his bill, in the Arkansas circuit court, to inforce a vendor's lien. The bill alleges the death of Hewitt; the appointment of Johnson, the appellee, as administrator, and that he, Wakefield, is the legal owner of the note; that no portion of the five hundred

dollars has been paid; that Hewitt and his legal representatives are, and have been, in possession of the lands ever since the purchase; that Thomisson is, and has, at all times, been ready to make deed to said lands, to said Hewitt, his heirs, etc., upon payment of said sum of five hundred dollars, with the interest due thereon; that Thomisson never tendered, to said heirs and legal representatives of said Hewitt, a good and sufficient deed, with general warranty, etc.

The *inference* to be drawn from the allegations, is, that the title to the property is yet in Thomisson, and yet, but for the allegation, that Thomisson is lawfully seized of the lands, that he has good right to convey the same, and that said land is free from all incumbrances, there is nothing in the bill to show that the title is in Thomisson; nor does the bill allege the execution of a title bond, or any agreement to convey at any time, nor do the terms of the sale appear from the bill.

The bill was filed on the 20th of March, 1869, but no deed was filed with the bill. On the 29th of April following, a demurrer was filed to the bill, on the ground that no deed had been tendered before the suit was brought. On the 3d of May, following, a deed was filed. The court sustained the demurrer, and dismissed the bill, and Wakefield appealed to this court.

If the agreement between Thomisson and Hewitt was, that the title should remain in Thomisson until the payment of the notes, this agreement should have been alleged by Wakefield. While it is true, as a general rule, that it is incumbent on the vendee to show a waiver of the lien, we understand that the assignee of a note, which is a lien upon land, must aver the agreement between the vendor and vendee, and failing in this, the doors to a court of equity would be closed on him. Where a sale of land is made, and a title bond is given to convey on the payment of residue of the purchase money, and the vendor of the property assigns one of the notes, it carries with it the lien; but, if the assignee desires to take advantage of the vendor's lien thus assigned, he must allege the considerations of the bond; and if this be so, where there is a bond, we do not

see why the relation between the vendor, vendee and assignee should not be set forth with the same certainty, in cases where there was a simple agreement to convey.

The bill nowhere alleges the original amount for which the property sold, but does allege that "a large portion of the purchase money for said tract of land was to be paid at a future day, after the sale." Whether the other notes have been paid off, does not appear from the bill; and, we think, this fact should appear, for if there were other notes due and unpaid, the holders thereof should have been made parties before tendering a deed. Whether the deed should have been tendered before the filing of a bill, is a question that the courts of this country are not unanimous upon. After a review of the holding of the courts that most nearly assimilate to that of our own, upon the assignment of the vendor's lien, we are of the opinion that the deed ought to have been tendered before the filing of the bill. The case of *Klyse v. Brayles (37 Miss., 524)*, is very similar to the case at bar. The allegation in the bill, in that case, is very similar to the allegation now in the bill before us. It was, "that the complainant was ready and willing, and has been at all times, and now is, to make title upon the payment of the purchase money." In that case, the defendant demurred to the bill, on the ground "that the complainant had not made or tendered to defendant a deed to the land, and demanded the purchase money so as to put the defendant in default, before filing said bill." This demurrer was sustained in the court below, and the cause went to the Supreme Court of Mississippi, and that court said: "The question is, are the vendees in default in making payment? The answer is, they *are not* until a tender of performance by another party."

We think the plain common sense view of this question is, where the vendee desires a deed, that, before he files his bill, he should make a tender of the money due, and that in case where the vendor wants the purchase money due, he should make out and tender a deed and demand the money. Time, in a title bond, is not, in a court of equity, regarded as the

essence of the contract. The mere fact that the money is due, and has not been paid, does not create a forfeiture, nor is such neglect regarded by a court of equity as a *default*. Ordinarily, a title bond recites that the deed is to be made upon the payment of the purchase money due. This language does not constitute a condition precedent. The payment of the purchase money and the execution of the deed are acts that are to be done *simultaneously*, and not in the order they happen to be stated. A tender of the deed, *before suit*, puts the vendee in default; a tender of payment, before suit, by the vendee, puts the vendor in default. To open the doors of a court of equity to litigants to come in and say, "I will make a deed if A. B. will pay the purchase money," or to allow a vendee to come into a court of equity and say, "I have the money and want my deed," before either of them has offered to perform, would be to say that the province of a court of equity, in such cases, is to play the part of a commissioner of deeds.

If a party comes into a court of equity and says his purchase money is due, and that he has tendered a deed to the opposite party, or if a vendee comes in and says he has made a tender of the purchase money and demanded a deed, here is something tangible; but until some such thing has been done, the time of the court is unnecessarily consumed. The court did not err in sustaining the demurrer; but the bill ought to have been dismissed without prejudice, and with this modification, the decree is affirmed.